The STATE of Ohio, Appellee,

v.

WILLIAMS, Appellant.

[Cite as *State v. Williams* (1988), 61 Ohio App.3d 594.]

Court of Appeals of Ohio,
Lorain County.

No. 4344.

Decided Dec. 7, 1988.

*Gregory A. White,* prosecuting attorney, for appellee.

*Joseph C. Grunda,* for appellant.

QUILLIN, Judge.

A jury found defendant, John J. Williams IV, guilty of assault, a first degree misdemeanor (R.C. 2903.13), but acquitted him of aggravated burglary (R.C. 2911.11). Defendant appeals, contending that the trial court erred (1) by denying his request for an independent handwriting expert, and (2) by excluding testimony concerning the motives and intent of the complaining witness. Because the second claim has merit, we reverse.

An Elyria police officer told defendant that defendant's apartment had been burglarized. After checking his apartment to see what was missing, defendant went to the home of Annette Canfield, a former girlfriend who lived a few doors away, to use her telephone to call the police. Defendant and Canfield had recently ended their relationship as a result of defendant's involvement with another woman, but continued to see each other.

While at Canfield's apartment, an argument between defendant and Canfield ensued. Defendant testified that Canfield let him into her apartment and gave him food. Defendant also claimed that he left the apartment when Canfield became abusive after he had declined her invitation to spend the night there.

Canfield, however, testified that defendant forced his way into the apartment, stole some food, and squeezed her wrists and shoved her while she was attempting to call the police for defendant. The police officer who responded to Canfield's complaint against defendant testified that one of her wrists was red.

Before trial, defense counsel presented three letters to the prosecution, which defendant contended he had received from Canfield while he was in jail awaiting trial. Canfield admitted writing two of the letters, but denied writing the third letter, which suggested that Canfield brought the charges to keep defendant a part of her life. After analyzing all three letters and handwriting exemplars, the prosecution's handwriting expert opined that the third letter had been written by defendant.

## Assignment of Error I

"The trial court erred to the prejudice of appellant, and in violation of rights conferred by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution, when it denied appellant's request for an independent handwriting analysis."

The appointment of an expert witness at state expense rests within the trial court's discretion. *State v. Gardiner* (June 11, 1981), Franklin App. No. 80AP–902, unreported, 1981 WL 3246. In the present case, the trial judge properly ruled that authorship of the letter in question was peripheral to the charges against defendant.

Unlike those cases in which an expert was appointed because handwriting identification was a disputed issue and was central to the prosecution's case, see, *e.g., English v. Missildine* (Iowa 1981), 311 N.W.2d 292, in the present case the state's case did not depend upon identification of defendant's handwriting, nor was authorship of the letter related to any elements of the crimes charged. See *Tubbs v. State* (Miss.1981), 402 So.2d 830; Annotation, Indigent—Right to Appointed Expert (1970), 34 A.L.R.3d 1256, 1288–1290. Furthermore, defendant was afforded a full and adequate opportunity to cross-examine both Canfield and the prosecution's expert concerning the letter.

We cannot say that the trial court abused its discretion in overruling defendant's motion for appointment of a handwriting expert at state expense.

The assignment of error is overruled.

## Assignment of Error II

"The trial court erred to the prejudice of appellant and in violation of rights conferred by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution, when it granted the prosecution's motion in limine excluding testimony relating to the intent and motives of the complaining witness."

Defendant sought to introduce the testimony of defendant's father, John J. Williams III, who would have testified that Canfield told him that she wanted defendant in jail so that she would know where he was, and that he was not with another woman. The other witness, Mike Dickson, would have testified that he had heard Canfield threaten to see that defendant would go to jail if he failed to "toe the line." Canfield was not asked about either of these statements during direct examination.

The trial judge ruled that such evidence was admissible only if it contradicted Canfield's prior testimony, but could not be independently used to show her

bias, prejudice, or motive to lie. As no foundation had been established, the court would not permit the proffered testimony.

Because the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness "so that, in the light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction." 3 Weinstein, Evidence (1988), Section 607[03], at 607–27.

There is disagreement whether, before a witness can be impeached by calling other witnesses to testify to statements indicative of bias, the witness under attack must first be asked about the statements. Weinstein, *supra*, at 607–52 to 607–53.

A foundation requirement, based on the analogy of impeachment by a prior contradictory statement, is supported by Professor Wigmore, who argued that "the same reasons of fairness that require a witness to be given an opportunity of denying or explaining away a supposed self-contradictory utterance require him also to have a similar opportunity to explain away or deny a supposed utterance indicating bias." 3A Wigmore, Evidence (1970) 800–801, Section 953. The federal courts and a majority of state courts follow this approach and require that a witness be asked whether he made the statement before extrinsic evidence of the statement can be introduced. Weinstein, *supra*, at 607–53; McCormick, Evidence (1984) 87–88, Section 40; Annotation, Necessity and Sufficiency of Foundation for Discrediting Evidence Showing Bias or Prejudice of Adverse Witness (1963), 87 A.L.R.2d 407.

Ohio, however, follows the minority rule and does not require that a foundation be laid as a prerequisite for the introduction of extrinsic evidence of witness bias. *State v. Kehn* (1977), 50 Ohio St.2d 11, 19, 4 O.O.3d 74, 78, 361 N.E.2d 1330, 1335, certiorari denied (1977), 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130; *State v. Carlson* (1986), 31 Ohio App.3d 72, 75, 31 OBR 112, 115, 508 N.E.2d 999, 1002: Weissenberger, Ohio Evidence (1985) 32–33, Witnesses, Section 607.7.

In *State v. Kehn, supra*, a co-defendant, Mihalic, sought to introduce the testimony of one Zimmerman, who would have testified that a prosecution witness, Broeckel, had referred to the co-defendant as a "rotten S.O.B." Broeckel had earlier testified that Mihalic was a "nice person." The Supreme Court ruled that the testimony was not to impeach a prior inconsistent statement by Broeckel, but rather to show that Broeckel was biased or prejudiced towards Mihalic. The Supreme Court held that the impeachment of a witness by showing bias or prejudice does not require the foundation necessary for impeaching a prior inconsistent statement. The Supreme Court

further held, however, that although the trial court erred in excluding the testimony, the error was harmless beyond a reasonable doubt.

In the present case, the proffered testimony was admissible for the purpose of showing Canfield's bias, prejudice or motive to lie, and thus to attack Canfield's credibility. Based on the rule established in *Kehn,* the trial court erred in excluding the proffered testimony.

 Can the error be considered harmless? We think it cannot. The only two witnesses to the alleged assault were defendant and Canfield. The jury obviously did not entirely believe Canfield because they acquitted defendant on the burglary charge. The credibility of Canfield was crucial to the prosecution's case.

The assignment of error is sustained.

The judgment of the trial court is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

MAHONEY, P.J., and GEORGE, J., concur.