OPINION.
In the early morning hours of May 6, 1995, Philip Haley, fourteen years old at the time, was shot twice, once in the head. The Cincinnati police responded almost immediately to the shooting. Haley was still breathing, and the police called for the life squad. Haley died later at University Hospital from the gunshot wound to his head.
That same morning, the police talked to two children who stated that they had witnessed the shooting. They stated that they saw three black men walking together. Then, one of the men began running away from the other two, and one took out a gun and shot the third. The third man ran across the street, but the second man followed and shot the victim again, this time in the head. The second man then ran from the scene past the house where the children were staying.
The first bullet that struck Haley had lodged in his jacket. Because Haley had no identification on him when the police found him, the police allowed the news media to broadcast a picture of the jacket, in the hopes that someone would recognize it and call the police. After seeing a newscast, Haley's family immediately came forward and identified the jacket as one belonging to Haley. Haley's sister went to the morgue and identified his body.
The stepfather of Rayshun Holt, defendant-appellant herein, also called the police after seeing the newscast, because Holt had been missing for several days. He was assured that the victim was not his son. Later, Holt's stepfather called back and stated that Holt might have some information regarding Haley's death. Haley's mother also told police that, the last time she had talked to her son, he told her he was going to see Holt.
The police arrested Holt on May 8, 1995, because he had an outstanding warrant for running away from an unsecured juvenile detention facility, and he was taken into custody. Because they believed that Holt might have witnessed Haley's murder, the police questioned him about Haley's death. At that time, Holt gave a statement to police that was later held subject to suppression because Holt had not been advised of his rights pursuant toMiranda v. Arizona(1966), 384 U.S. 436, 86 S.Ct. 1602.
After Holt had been taken into custody on the outstanding warrant, the authorities received an anonymous tip that a juvenile named Ronnell McCloud had information about Haley's homicide. McCloud told investigating officers that he had heard Holt admit to shooting Haley. He stated that he was acquainted with Holt and Anthony Bines, another juvenile, and that Bines had been with Haley and Holt the night that Haley was killed.
The police then interviewed Bines. Bines told the police that he, Haley and Holt had been walking around the Evanston neighborhood early in the morning on May 6, 1995. Haley had brought a gun with him, which he gave to Holt to hold. When the trio turned from Woodburn Avenue onto Dexter Avenue, Holt and Haley began teasing each other, and the teasing escalated into an argument. Haley demanded his gun back from Holt, but Holt refused.
Thereafter, according to Bines, Holt removed the gun from his trousers and shot Haley. Bines separated from them and moved down the street, looking over his shoulder. He saw Haley clutch his arm and run across the street away from Holt and behind a parked van. Bines stated that Holt followed Haley. Bines then heard another gunshot, and he ran without looking back. Bines went with the police to the scene of the crime and recounted the events of May 6, 1995.
On June 19, 1995, two Cincinnati police officers again interviewed Holt about Haley's death. This time the officers read Holt his Miranda rights, and one officer questioned him while another made written notes of the responses. Holt told the officers that he and Haley were confronted by three individuals, one of whom had a gun. He began to run away and heard three gunshots.
Holt was thereafter charged with the murder of Philip Haley. On August 8, 1995, Holt was indicted by a grand jury on one count of murder with a firearm specification. Holt was found guilty, but a panel of this court reversed the conviction and remanded for a new trial because of the erroneous admission of some evidence. See State v. Holt(Sept. 12, 1997), Hamilton App. No. C-960140, unreported.
The case against Holt was again presented to a jury commencing on May 26, 1998. Holt was represented by the same attorney who had been his lead trial counsel in the first trial and who had brought Holt's first appeal. Holt's version of the events on May 6, 1995, was substantially different from the version that he had given to the investigating officers on June 19, 1995, and the version presented in his first trial as his defense.
In his opening statement, made after the state's case-in-chief, counsel for Holt represented that the evidence would show that Holt, Haley and Bines had robbed a drug dealer at gunpoint earlier in the day. Later, Bines accused Haley of withholding some of the proceeds of the robbery. Bines's accusation escalated into an altercation that concluded when Bines fatally shot Haley in the head. Holt testified during the proceedings below, and he gave the same account that had been outlined by his attorney during his opening statement.
At the conclusion of the trial, the jury again found Holt guilty as charged, and he was sentenced as it appears of record. From that judgment, Holt brings this timely appeal in which he advances eleven assignments of error. We hold that none of the assignments of error has merit, and we affirm the judgment of the court below.
 I.
In his first assignment of error, Holt urges that the lower court erred by overruling his motion to dismiss the charges, because he had not been present at one of the hearings in his case. Crim.R. 43 requires that a criminal defendant be present at every stage of trial. Holt alleges that the lower court scheduled a hearing for March 5, 1998, and that he and his counsel "were not present when the prosecutor introduced [certain witnesses]." The record belies Holt's contention.
At the hearing on Holt's oral motion to dismiss, the lower court categorically denied that it had scheduled a hearing for March 5, and there is no such scheduling order in the record. Instead, as Holt's counsel knew well, the state had issued subpoenas for that date in order to interview its witnesses in preparation for trial. This court has denounced that practice as one violating Crim.R. 17, but we have held that no remedial action need be taken unless the defendant can demonstrate prejudice. SeeState v. Campbell(Jan. 8, 1997), Hamilton App. No. C-950746, unreported.
The record does not demonstrate that Holt was prejudiced by the state's use of the subpoenas. Further, Holt's trial counsel withdrew his request for a hearing at which he planned to lay out a case for prejudice, because the state suggested that Holt could use the same method to prepare for trial. The first assignment of error is overruled.
 II.
In his second assignment of error, Holt contends that the lower court erred by overruling his objections to the introduction into evidence of photographs of the deceased. We disagree.
Nonrepetitive photographs, even if gruesome, are admissible if relevant and of probative value, as long as the probative value of each photograph outweighs the danger of material prejudice to the accused. State v. Maurer(1984), 15 Ohio St.3d 239,473 N.E.2d 768, paragraph seven of the syllabus. Decisions on admissibility are within the discretion of the trial court. SeeState v. Slagle(1992), 65 Ohio St.3d 597, 601, 605 N.E.2d 916,923.
The photographs of which Holt complains included a professional photograph of Haley, State's Exhibit 1, taken some time before the murder. Counsel failed to object to the admission of this photograph, and so has waived any error except plain error. This court will not reverse a decision of the trial court under the plain-error doctrine unless "but for the error, the outcome of the trial clearly would have been otherwise." SeeState v. Long(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus; State v. Campbell(1994), 69 Ohio St.3d 38,41, 630 N.E.2d 339, 345. Having reviewed the record and the other evidence presented against Holt, we hold that exclusion of the photograph would not have led to a different outcome in the trial.
The state sought admission of four other photographs. These photographs were used in conjunction with the testimony of the pathologist who conducted the postmortem examination of Haley's body. Our review of the record convinces us that the lower court did not err by admitting the photographs. There were only four photographs admitted, and the subject matter was not unduly repetitive. Holt has failed to demonstrate that the lower court abused its discretion in admitting the pictures into evidence. The second assignment of error is overruled.
 III.
In his third assignment of error, Holt claims that he was denied the effective assistance of trial counsel because counsel failed to object to the introduction into evidence of the photograph that depicted Haley while he was still alive. To prevail on a claim of ineffective assistance of counsel, Holt must show that his counsel's performance fell below an objective standard of reasonableness and, in addition, that he was prejudiced by counsel's performance. See Strickland v. Washington
(1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 2064; State v.Bradley(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.
We hold that, in regards to the admission of the photograph, counsel's performance did not fall below an objective standard of reasonableness, as we have ruled that the other photographs were admissible, and the admission of this additional photograph was within the trial court's discretion. We also find no unfair prejudice to Holt by the admission of this one additional photograph. Therefore, the third assignment of error is overruled.
 IV.
In his fourth assignment of error, Holt maintains that the lower court erred by declaring a state's witness, Ronnell McCloud, unavailable to testify and permitting McCloud's testimony from the first trial to be read to the jury. We do not agree.
McCloud had testified at the first trial that Holt had admitted to him that Holt had killed Haley. McCloud had been cross-examined by Holt's counsel during that proceeding. McCloud was subpoenaed for the second trial by the state, when investigating police officers located him in the Hamilton County Justice Center, where he was being held on an unrelated charge.
Prior to trial, McCloud was released from custody and did not respond to the state's subpoena. Accordingly, the state requested that the lower court permit the introduction of McCloud's testimony from the earlier trial pursuant to the hearsay exception set forth in Evid.R. 804. Evid.R. 804(B)(2) permits admission of testimony given in a previous trial upon a showing that a witness is unavailable, despite reasonable efforts made in good faith to secure his presence at trial. See State v. Keairns(1984),9 Ohio St.3d 228, 460 N.E.2d 245, paragraph two of the syllabus. The lower court permitted that testimony, including cross-examination, to be presented to the jury.
In Keairns, the Ohio Supreme Court set forth a two-part test for determining the admissibility of hearsay evidence under Evid.R. 804(B)(2). Under the first part of the test, "[a] witness is not considered unavailable unless the prosecution has made reasonable efforts in good faith to secure his presence at trial."Id. at 230, 460 N.E.2d at 248. A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than by unsworn, hearsay evidence. Id. at paragraph three of the syllabus. The second part of the test requires the out-of-court statement to bear sufficient indicia of reliability. Id. at 230,460 N.E.2d at 248. See, also, State v. Black(1993), 85 Ohio App.3d 771,775-776 621 N.E.2d 484, 487-488.
Here, police officers testified under oath to their substantial efforts to locate McCloud. Different officers attempted to locate McCloud at the several addresses where he was known to stay. When the police could not locate him, a "flag" was placed on his computer record so that if he were stopped for a traffic violation or arrested for any reason, the detaining officer would know to notify the homicide division.
The system was productive, and the officers became aware that McCloud was in the Hamilton County Justice Center. Officer Feldhaus personally met with McCloud and physically handed McCloud the subpoena. When McCloud threw the document back at Officer Feldhaus, the officer verbally relayed the information that was in the subpoena, and warned McCloud that his failure to appear and give testimony could subject him to criminal penalty. McCloud was released from the Justice Center. Prior to the trial, Officer Feldhaus attempted to talk to McCloud by telephone, but he was unable to make contact.
The foregoing testimony of the officers involved in this case demonstrates a good-faith, reasonable attempt to secure McCloud's presence at trial, and we hold that the trial court did not err in determining that the state had satisfied the first part of the test set forth in Keairns.
Holt claims that the trial court was required to exercise its contempt power and order that McCloud be arrested and brought into court to testify. The failure to do so, Holt claims, was a violation of his constitutional right to confront the witnesses against him. Holt cites no authority for this proposition, and we likewise find no support for the contention that the trial court must exercise its contempt power to secure the presence of a subpoenaed witness who otherwise meets the definition of an "unavailable" witness for purposes of the hearsay rule.
Further, the prior testimony of McCloud was taken during the first trial when he was under oath and subject to cross-examination by Holt's trial counsel. This sworn and unrecanted testimony bears significant indicia of reliability; in fact, it has he strongest indication of trustworthiness, apart from live, sworn testimony. Accordingly, we hold that the lower court did not err by declaring McCloud to be unavailable and permitting his prior trial testimony to be read to the jury. The fourth assignment of error is overruled.
 V.
In his fifth assignment of error, Holt asserts that the lower court erred by admitting into evidence the testimony of Keith Hawkins. The assignment is without merit.
Hawkins was an inmate at the institution where Holt was incarcerated following his conviction at the first trial. The state called Hawkins as a witness, and he testified that he had overheard Holt bragging to other inmates about killing Haley. Holt maintains that this testimony was not credible because the state promised that if Hawkins did testify, it would move him to another institution for his safety, and that his cooperation would be noted to the parole authorities.
Rulings on the admission of evidence during trial generally rest in the sound discretion of the court and will not be reversed absent an abuse of that discretion. See State v. Maurer(1984),15 Ohio St.3d 239, 265, 473 N.E.2d 768, 791. An abuse of discretion is more than an error of law or of judgment; the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. See State v. Adams(1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144, 149.
A witness's testimony is not rendered inadmissible simply because evidence exists that the witness might be biased. See,e.g., Evid.R. 616 ("bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness"); State v.Williams(1988), 61 Ohio App.3d 594, 597, 573 N.E.2d 704, 705. Such testimony is admissible, although the witness is subject to impeachment by the party against whom the evidence is offered.
The bias inherent in Hawkins's testimony was made apparent to the jury during the trial. The jury was free to consider that evidence in evaluating his credibility, but the court was not free to deny the state the right to present a witness, even if the court believed that the witness's motives were suspect and his credibility wanting. The weight to be given the evidence and the credibility of the witnesses are generally matters to be determined by the finder of fact. See State v. DeHass(1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
Holt's complaint that the prosecution should have put on evidence that the state had undertaken an independent investigation to verify the inmate's testimony before it could be introduced is without merit. We find no support for such a contention. Obtaining evidence that a statement is unreliable would, it seems, be the defense counsel's burden. In any event, there is no requirement that the state lay a foundation for inmate testimony by putting on evidence of an independent verification of the testimony's accuracy or reliability.
Finally, the fact that the inmate's testimony indirectly informed the jury that Holt was in prison does not demonstrate that the trial court improperly permitted testimony of Holt's "bad acts." The fact that the two were incarcerated in the same facility was incidental to the inmate's testimony, and did not prejudice Holt. For the forgoing reasons, the fifth assignment of error is overruled.
 VI.
Under his sixth assignment of error, Holt avers that the lower court erred by allowing the state to elicit improper testimony through the use of leading questions and further failed to control the improper conduct upon objection. The record shows that the prosecutor, in fact, began to ask leading questions of a witness, Officer O'Brien, about a statement that Bines had made to the officer. Holt's counsel objected, and the lower court sustained the objections. The court admonished the prosecutor to refrain from asking leading questions, and it instructed the jury to disregard the responses given to the leading questions.
Although the prosecutor continued, despite warnings from the court, to ask questions that were arguably leading, we hold that the questions did not prejudice Holt, because Officer O'Brien's responses were substantially the same as the testimony that Bines had given before the jury. Even if, as Holt argues, the prosecution ignored the direct commands of the court to terminate the improper line of questioning, no prejudice resulted to Holt from the questions and answers. The sixth assignment of error is overruled.
 VII.
In his seventh assignment of error, Holt claims that the lower court erred by permitting the state to elicit evidence of his prior bad acts, thereby denying Holt a fair trial. The assignment is meritless.
Evid.R. 404 prohibits the introduction into evidence of "other acts" of a defendant, except for certain limited purposes. Here, Holt claims that the state prejudicially elicited such testimony. The first act concerned Holt's arrest for escaping from a juvenile detention facility This testimony came out in the officers' explanation of their initial contact with and interrogation of Holt.
The record shows that Holt's counsel first raised the issue of Holt's arrest in his cross-examination of Officer O'Brien. Counsel several times referred to Holt's detention in the juvenile facility and elicited testimony from O'Brien to the effect that O'Brien never recorded the statement Holt gave to him, had not taken his photograph, and had not interviewed Holt despite knowing his whereabouts. O'Brien also testified on cross-examination that the investigation of the case stalled for several months, even though the authorities knew where to find Holt (i.e., in detention).
The evidence that Holt had been detained on a juvenile court order, rather than because of his involvement in the murder of Philip Haley, explained to the jury why O'Brien did not take a more aggressive approach in interrogating Holt and continuing the investigation. Holt was not, at that time, considered a suspect, but was detained on unrelated charges. We hold that Holt's counsel invited the allegedly improper testimony by his questions on cross-examination. A party who invites an error may not demand from the appellate court protection from its consequences. SeeState v. Chappell(1994), 97 Ohio App.3d 515, 537,646 N.E.2d 1191, 1204.
The other instance of "other acts" evidence identified by Holt concerns the state's reference to an "earlier proceeding" in the case and its attempt to elicit from Holt the defense that had been interposed at the first trial. The lower court sustained Holt's counsel's objections to the line of questioning, and Holt was never required to testify about his earlier defense.
Holt claims that the state's questions violated Evid.R. 404, as "other acts" evidence. Evid.R. 404(B) prohibits the introduction of prior crimes, wrongs or acts committed by a witness to prove the character of the witness in order to show that he acted in conformity therewith. This evidentiary rule is inapplicable in this case. The state was not attempting to elicit testimony as to some conduct or act of Holt in order to establish his character and then to show that he acted in conformity with his character.
The critical issue at that point in the trial was the difference between Holt's explanation of the circumstances of Haley's death in the statement that he had given to the police, which was the basis for his defense at the first trial, and the explanation Holt provided in the second trial when he testified. The lower court sustained Holt's objection to the line of questioning about the "prior proceeding," and we find no prejudice to Holt as a result of the testimony. The seventh assignment of error is overruled.
 VIII.
In his eighth assignment of error, Holt states that the lower court erred by permitting the state to make repeated references to Holt's taped statement to the police, when that statement had been held inadmissible by this court. Holt made many statements to the police. Only one of them was held inadmissible by this court in the first appeal. The record shows that counsel for Holt made the first reference to that statement when Holt was testifying on direct examination. Holt's counsel asked him if he had made a statement to police on a particular date, and whether he had told the truth on that date.
Having opened the door to questioning about that particular statement to the police, Holt cannot now assign as error the trial court's failure to exclude such testimony. See State v. Chappell,97 Ohio App.3d at 537, 646 N.E.2d at 1204.
The statement itself was admissible as a prior inconsistent statement made by Holt. In the second trial, Holt testified that Bines had killed Haley when the two of them got into an argument about money that the trio had allegedly obtained from a robbery committed earlier in the day. In his other statements to the police, Holt stated that he and Haley had been accosted by three men, one of whom put a gun to Haley's head and killed him. Thus, under Evid.R. 613, the lower court properly permitted the state to play the earlier statement for the jury and then use it for impeachment of Holt on cross-examination. The eighth assignment of error is overruled.
 IX.
Under his ninth assignment of error, Holt alleges that he was the victim of ineffective assistance of trial counsel, because counsel asked him about lying to the police and then mentioned that fact to the jury during closing argument. As we have already held, in order to prove ineffective assistance of counsel, a defendant must show that his attorney's representation fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance. In order to show prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland v. Washington(1984),466 U.S. 668, 104 S.Ct. 2052; State v. Bradley(1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus.
Here, even if Holt's counsel's performance fell below an objective standard of reasonableness when he referred to the statement that had been held inadmissible, Holt has not demonstrated that he was prejudiced by his counsel's actions. Holt gave several statements to the police, only one of which was held inadmissible. In one of the other statements to police, Holt provided essentially the same information that he had given in the inadmissible statement. Thus, regardless of whether Holt's counsel referred to the first, inadmissible statement or the second, admissible statement, the same evidence would have been brought before the jury.
Introducing evidence that Holt had lied to the police was not ineffective assistance of counsel. While Holt did not take the stand in his first trial, he planned to testify at the second trial. The version of events that he was to testify to was substantially different from the statement (the admissible statement) that he had given to the police. Accordingly, it may have been sound trial strategy to attempt to lessen the impact of the earlier statement, which was inconsistent with the current defense, by having Holt admit that he had lied. See, e.g., Statev. White(1998), 82 Ohio St.3d 16, 24, 693 N.E.2d 772, 779-780
(defense counsel's attempt to lessen impact of evidence of defendant's prior bad acts by having defendant admit them was sound trial strategy).
Regardless of whether Holt's counsel elicited testimony about the first, inadmissible statement or the second, admissible statement, the same evidence would have been presented to the jury. Accordingly, the ninth assignment of error is overruled.
 X.
Under his tenth assignment of error, Holt asserts that the lower court erred by allowing the state to introduce evidence of the statement that had been held inadmissible by this court, and by allowing the state to deliver a prejudicial closing argument to the jury. We have previously ruled in our disposition of Holt's eighth assignment of error that the admission of the statement was not improper. Moreover, the lower court did not permit the prosecutor to refer to the statement.
Finally, we have reviewed the state's closing argument and the comments that defendant claims were inflammatory and prejudicial. We hold that the argument, when taken as a whole, did not prejudice Holt. See State v. Frazier(1995), 73 Ohio St.3d 323,342, 652 N.E.2d 1000, 1016; State v. Moritz(1980),63 Ohio St.2d 150, 157-158, 407 N.E.2d 1268, 1273. Accordingly, the tenth assignment of error is overruled.
 XI.
In his eleventh, and final, assignment of error, Holt argues that his conviction is against the weight and the sufficiency of the evidence. To reverse a conviction for insufficient evidence, a reviewing court must be persuaded, after viewing the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks(1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.State v. Thompkins(1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546.
To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. State v. Martin(1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720, cited with approval in State v. Thompkins(1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546.
Ample evidence was presented at trial to support Holt's conviction for murder. The state presented eyewitnesses who identified Holt as the person who pulled the trigger and shot Haley. The evidence showed that Holt shot Haley once in the arm. When Haley tried to get away from Holt, Holt followed him across the street, put the gun to the back of Haley's head, and killed him. The state also presented evidence that Holt told several people that he had killed Haley. All of this evidence, if believed, was sufficient to sustain Holt's conviction.
After reviewing the record, we are also convinced that the trier of fact did not lose its way in resolving conflicts in the evidence or assessing credibility. The jury was justified in disbelieving Holt's version of the events involved in the shooting. Holt's eleventh assignment of error is overruled.
 XII.
For the foregoing reasons, the judgment of the trial court is affirmed.
Judgment affirmed.
 Doan, P.J., and Gorman, J., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.