DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the April 27, 2004 judgment of conviction and sentencing entered by the Wood County Court of Common Pleas after a jury found appellant, Dale Slocum, guilty of kidnapping. For the reasons that follow, we affirm the judgment of the trial court.
{¶ 2} At a trial that commenced on April 20, 2004, the following evidence was presented. The victim, then a 39 year old woman, testified that she and appellant had an 8 year dating relationship starting in 1985. Thereafter, appellant and the victim had no contact for a ten year period. Upon appellant's impending scheduled release from prison in September 2003, appellant and the victim renewed their relationship, according to the victim's testimony, as "friends." Upon his release from prison in early September 2003, appellant came to live with the victim at her residence.
{¶ 3} The victim testified that she and appellant had consensual sexual relations during this period in early September 2003. However, there were several incidents in which appellant brought up the topic of his desire to be with a younger woman. Whenever appellant did so, the victim expressed that she did not want to talk about such a matter. Finally, one Monday in September 2003, when appellant again brought up the topic of a younger woman, the victim told appellant to move his things out of her residence.
{¶ 4} That Friday afternoon, appellant called the victim and invited her over to his mother's residence where he was staying. Appellant's mother was away for the night and appellant was alone. The victim told appellant she would be over in about an hour. However, the victim was running late and appellant called her. Appellant was angry that the victim was late and told her not to bother coming to see him. The victim called appellant back two or three times to apologize for being late, but appellant hung up the phone.
{¶ 5} Several hours later at approximately 1:00 a.m., appellant called the victim again asking her to come over. The victim agreed and went over to appellant's mother's residence.
{¶ 6} Appellant and the victim had consensual sexual intercourse. Then, appellant again brought up the topic of being with a younger woman. The victim told appellant that she did not was to discuss that topic, that she was tired, and that she was going to go home. As the victim was reaching for the door to leave, appellant came up behind her, grabbed her hair, threw her to the floor, hit her in the face, and said, "You ain't going nowhere, bitch. You're going to die tonight." For the next hour or two, the victim sat in a chair wiping blood from a wound on her mouth onto her pajama pants while appellant threatened to kill her and "snap her neck" if she tried to run. Appellant denied the victim's request to call her two adult daughters to tell them goodbye.
{¶ 7} At one point during this ordeal, appellant demanded that the victim perform oral sex on him. She began to comply with this demand; however, appellant stopped the victim, pulled her pants down and had intercourse with her.
{¶ 8} At or around 6:30 a.m., the victim brought up the topic of her deceased sister. Appellant finally told the victim she could leave and he wouldn't "snap her neck" on the way out.
{¶ 9} The victim drove herself home and initially did not tell her daughter who resided with her what had happened. However, the victim's daughter saw the wound on the victim's mouth. Over the next couple of hours, the victim related the events to a friend who came over to the victim's residence. The victim went to the Perrysburg Township Police Department and was referred to St. Luke's Hospital for a rape kit procedure.
{¶ 10} Appellant was indicted on one count of kidnapping, in violation of R.C. 2905.01, and one count of rape, in violation of R.C. 2907.02(A)(2). Prior to the final full trial in this matter, there were two mistrials. The victim had testified in one of these prior aborted trials.
{¶ 11} At the final trial, while cross-examining the victim, appellant's trial counsel asked a question referring to the victim's prior trial testimony. The state objected on the basis that Crim.R. 16(B)(1)(g) required an in camera inspection regarding whether the witness's prior statement (in the present case, the victim's prior trial testimony) was in fact inconsistent with her current trial testimony before such prior statement can be used in cross-examination. The trial court agreed and counsel embarked on a procedure whereby appellant's trial counsel requested side-bars throughout his cross-examination of the victim every time he wanted to use an allegedly inconsistent statement from the victim's prior trial testimony. The trial court granted appellant's trial counsel's request to use several of the victim's prior trial statements as inconsistent. However, the trial court denied appellant's trial counsel's request to use two statements which the trial court found to be not inconsistent with her present trial testimony on two topics: (1) whether a Sunday, the day before the victim told appellant to move out, was the first time appellant had raised the younger woman topic, and; (2) how blood got on the back of a sweatshirt she was wearing.
{¶ 12} During his case, appellant's trial counsel called appellant's mother as a witness. During his direct examination of appellant's mother, appellant's trial counsel tried to elicit information concerning what the victim had told appellant's mother about the victim's view of the nature or seriousness of her relationship with appellant. The state objected to the question as calling for hearsay and as not complying with Evid.R 613(B) extrinsic evidence requirements. The trial court agreed and sustained the state's objection. For the record on appeal, appellant's trial counsel proffered to the trial court what appellant's mother's testimony would be on the subject.
{¶ 13} The jury found appellant guilty of the kidnapping charge, but not guilty of the rape charge. Appellant now appeals the judgment against him, setting forth the following assignments of error:
{¶ 14} "I. The Trial Court erred to the prejudice of Appellant by improperly limiting Defense Counsel's ability to cross examine the alleged victim as to statements she made at a prior trial that proved inconsistent with statements made at the final trial of the matter.
{¶ 15} "II. The Trial Court erred to the prejudice of Appellant by denying Defense Counsel an opportunity to introduce extrinsic evidence of specific contradictions between the facts and the alleged victim's testimony.
{¶ 16} "III. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth andFourteenth Amendments to the United States Constitution and Article I, § 10
of the Constitution of the State of Ohio."
{¶ 17} In his first assignment of error, appellant asserts that the trial court improperly limited appellant's trial counsel's ability to cross-examine the victim as to her prior trial testimony that was allegedly inconsistent with her final trial testimony in two general ways: (1) improperly requiring distracting side-bars for in camera comparisons of the testimony under Crim.R. 16(B)(1)(g), thus interrupting the "flow" of the cross-examination, and; (2) improperly finding that there were no inconsistencies in two areas. Appellant asserts that pursuant to Evid.R. 613 and 616, appellant's trial counsel should have been permitted to cross-examine the victim regarding: (1) the number of times appellant allegedly raised the younger woman topic with the victim, and; (2) how blood got on the back of the victim's sweatshirt.
{¶ 18} It is well-established that a trial court has discretion to admit or exclude evidence at trial, and a reviewing court should not reverse such a decision absent an abuse of discretion.State v. Myers, 97 Ohio St. 3d 335, 2002-Ohio-6658, at ¶ 75. The Supreme Court of Ohio has stated that "the term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
{¶ 19} The parties agree that pursuant to State v. Reyes, 6th Dist. No. WD-02-069, 2004-Ohio-2217, which was decided after the final trial in this matter, it was error for the trial court to apply the in camera inspection requirement of Crim.R. 16(B)(1)(g) to appellant's attempts to impeach the victim with her testimony from prior trial testimony. Reyes at ¶ 52. However, a witness's prior inconsistent statement made at a preliminary hearing is admissible as impeachment evidence if the mandates of Evid.R. 613(B) are followed. Id. at ¶ 51. Likewise, we find that a witness's prior inconsistent statement made at a prior trial is admissible as impeachment evidence if the mandates of Evid.R. 613(B) are followed. See Stern v. Stern, 7th Dist. No. 02-JE-17, 2003-Ohio-3293.
{¶ 20} Extrinsic evidence under Evid.R. 613(B) is only admissible if both of the following apply:
{¶ 21} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require; (2) The subject matter of the statement is one of the following: (a) A fact that is of consequence to the determination of the action other than the credibility of a witness * * *." Evid.R. 613(B).
{¶ 22} Further, "[w]hen extrinsic evidence of a prior inconsistent statement * * * is offered into evidence pursuant to Evid.R. 613(B), a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." State v. Theuring (1988),46 Ohio App.3d 152, 155.
{¶ 23} Similar to Reyes, by its erroneous in camera inspection under Crim.R. 16(B)(1)(g), the trial court in the present case prevented appellant's trial counsel from laying the proper foundation for admission of the victim's prior trial testimony under Evid.R. 613(B). However, the state argues that even if the trial court had not conducted a preliminary in camera inspection under Crim.R. 16(B)(1)(g), the state would have objected to appellant's trial counsel's attempt to bring in the victim's prior trial testimony on consistency grounds. Indeed, a party who seeks to have a prior statement admitted for impeachment purposes must satisfy a threshold inconsistency requirement. State v. Apger (Oct. 26, 1995), 8th Dist. No. 67928. Courts have routinely embarked on this consistency analysis in ruling on admissibility issues related to a witness's prior statements. See State v. Berry (June 29, 1999), 10th Dist. Nos. 97AP-964, 98AP-256; State v. Ecklin (June 9, 1995), 11th Dist. No. 94-L-077. Thus, we find no merit in appellant's complaint that but for the trial court's erroneous in camera inspections pursuant to Crim.R. 16(B)(1)(g), appellant's counsel would have had an uninterrupted flow for his cross examination.
{¶ 24} Next, we must examine whether the trial court erred in finding that there was in fact no inconsistency between the victim's prior trial testimony and her final trial testimony on the two topics noted. First, regarding when appellant initially raised the topic of younger women, at the prior trial, on direct examination, the victim testified that everything went well between herself and appellant for the first week. When asked "[w]hat happened at the end of that first week?" the victim replied that appellant started talking about being with a younger woman. Later, during cross-examination at the prior trial, the victim answered questions regarding "an argument" she and appellant "got into". When asked if that argument was on Sunday evening, the victim answered in the affirmative. In comparison, in her final trial testimony, the victim testified on direct examination that appellant brought up the topic "a couple days" into appellant's stay at her residence and that appellant raised the topic a few times prior to Sunday. Second, regarding the victim's testimony relative to the origin of the blood on the back of her sweatshirt, at the prior trial she testified that she did not know how it got there. In comparison, at the final trial, when asked "[d]o you have an explanation how you got the blood on the back of your sweatshirt?" the victim offered a tentative, somewhat speculative reply, "I think the only thing is when I pulled the sweatshirt up, I think maybe I had used it to maybe wipe it, the blood."
{¶ 25} In State v. Berry (June 29, 1999), 10th Dist. Nos. 97AP-964, 98AP-256, the court noted that Evid.R. 613 does not define an inconsistent statement. However, "[a] general definition of an inconsistent statement is: `It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict.' McCormick, Evidence (3rd Ed. Cleary Ed. 1984) 73, Section 34, n. 15." Berry. We find that the victim's prior trial testimony, taken as a whole, regarding when appellant initially raised the younger woman topic, as well as the origin of the blood on the back of her sweatshirt, is not materially inconsistent with her final trial testimony on the same issues.
{¶ 26} More importantly, even if the trial court erred in ruling there was no inconsistency, it was harmless error, because these prior statements do not meet the requirements of Evid.R. 613(B)(2)(a). The subject matter of the prior statements (whether appellant first raised the younger woman topic on Sunday or had already raised it earlier in the week, and whether she had no definitive knowledge concerning the origin of the blood on the back of his sweatshirt or whether she might speculate that she wiped it there) is not "a fact that is of consequence to the determination of the action other than the credibility of a witness." Evid.R. 613(B)(2)(a).
{¶ 27} Finally, the decision to admit extrinsic evidence of prior inconsistent statements relative to a witness's credibility is a matter left to the sound discretion of the trial judge,State v. Soke (1995), 105 Ohio App.3d 226, 239, and "the court retains discretion to determine whether claimed differences between prior statements and trial testimony are material inconsistencies." State v. York (Oct. 24, 1985), Cuyahoga App. No. 49952. Further, "[w]hether to admit a prior inconsistent statement which is collateral to the issue being tried and pertinent only with respect to the credibility of a witness is a matter within the trial court's discretion." State v. Riggins
(1986), 35 Ohio App.3d 1, 3. We do not find that the trial court abused its discretion in denying appellant's trial counsel the opportunity to use the victim's prior trial testimony relative to when appellant first raised the younger woman topic and the origin of the blood on the back of her sweatshirt. Accordingly, appellant's first assignment of error is not well-taken.
{¶ 28} In his second assignment of error, appellant asserts that the trial court erred by denying appellant's trial counsel an opportunity to introduce evidence, via appellant's mother's testimony, of out-of-court statements the victim allegedly made to appellant's mother regarding the victim's view of her relationship with appellant and the victim's feelings for appellant. At a side-bar, appellant's trial counsel proffered the nature of the testimony appellant's mother would have given if permitted as follows:
{¶ 29} "I believe given the opportunity, [appellant's mother] would have testified that [the victim] had spoken to her on the telephone; that she referred to Dale Slocum as being the soul mate in her life; that she was counting the days until Dale was released; that this time Dale was going to marry her; and things of that various nature."
{¶ 30} Appellant argues that under Evid.R. 613 and 616, this testimony was admissible. We agree with appellant's counsel's characterization of these two rules as circuitous as applied in the instant case. The extrinsic evidence of the victim's out-of-court statements to appellant's mother is admissible under Evid.R. 613(B) as applicable to the present case, only if offered solely for the purpose of impeaching the victim and the subject matter of the statement is a fact that is of consequence to the determination of the action other than the credibility of the victim or a fact that may be shown by extrinsic evidence under Evid.R. 616(A) showing bias. Evid.R. 613(B)(1) and (2)(a), (b). In turn, Evid.R. 616 provides in pertinent part:
{¶ 31} "In addition to other methods, a witness may be impeached by any of the following methods:
{¶ 32} "(A) Bias
{¶ 33} "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence. * * *
{¶ 34} "(C) Specific contradiction
{¶ 35} "Facts contradicting a witness' testimony may be shown for the purpose of impeaching the witness' testimony. If offered for the sole purpose of impeaching a witness' testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
 i. "(1) Permitted by Evid.R. * * * 616(A) * * *." Evid.R. 616.
{¶ 36} In his side-bar argument to the trial court, appellant's trial counsel clearly stated that appellant's mother's testimony regarding the phone call was not being offered for the sole purpose of impeachment of the victim's testimony regarding the nature of her relationship with appellant. Appellant's trial counsel asserted that this testimony was also going to be used to show the victim's "state of mind" or "frame of mind" leading up to her allegations of rape and kidnapping. Appellant's current counsel asks this court to dismiss trial counsel's "mischaracterization" of the purpose of the proffered testimony from appellant's mother and asserts that the sole purpose was indeed to impeach the victim. In other words, despite appellant's trial counsel's misstatement, appellant's current counsel urges this court to "harmonize" his current appellate arguments with the facts presented and find that Evid.R. 613(B) applies. In the interest of justice and getting to the merits, this court will do so.
{¶ 37} Despite appellate counsel's reference to Evid.R. 613(B), we find that the provisions of Evid.R. 616(A) are more applicable to the attempts to admit appellant's mother's testimony. Clearly, appellant's mother's testimony regarding the victim's statements relative to the victim's feelings for appellant was extrinsic evidence designed to impeach the victim by showing bias, prejudice, interest, or some motive to misrepresent under Evid.R. 616(A). At the side-bar, appellant's trial counsel argued that "the nature of the defense is that [the victim] was in love with [appellant], and she had carried on about him for many years. When she got up on the witness stand, she said she only considered him to be a friend or friendship with potential, and directly contradicted that both by her own actions, but also by what she has told [appellant's] mother."
{¶ 38} In State v. Denis (1997), 117 Ohio App.3d 442, this court ruled that the trial court erred in quashing subpoenas of court and police record keepers and in not allowing the appellant to call these individuals as witnesses as to whether the alleged domestic violence victim had filed prior complaints against the appellant, and thus had a history of harassing the appellant.Denis cited the language of Evid.R. 616(A) and found that such testimony would be indicative of a bias or prejudice on the part of the alleged victim which might taint her credibility. Denis
also noted that the credibility of the victim, one of only two witnesses, was crucial to the appellant's conviction.
{¶ 39} Denis also cited State v. Williams (1988),61 Ohio App.3d 594. In Williams, the jury found the appellant guilty of assault but acquitted him of aggravated burglary. The appellant claimed error in the trial court's decision not to permit proffered testimony from the appellant's father and another witness concerning out-of-court statements the victim made regarding her desire to see the appellant go to jail "so that she would know where he was, and that he was not with another woman." Id. at 596. The victim was not asked about these statements on direct examination. The court stated, "[b]ecause the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness `so that, in light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction.' 3 Weinstein, Evidence (1988), Section 607[03], at 607-27." Id. The court concluded that the proffered testimony was admissible for the purpose of showing the victim's bias, prejudice or motive to lie, and thus to attack the victim's credibility. Id. at 598.
{¶ 40} In the present case, we find that the trial court erred in excluding the testimony from appellant's mother relative to the victim's statements concerning the victim's feelings for appellant. The proffered testimony was admissible for the purpose of showing the victim's bias, prejudice or motive to lie, and thus to attack the victim's credibility. Further, the jury obviously did not entirely believe the victim because they acquitted appellant on the rape charge.
{¶ 41} Next, we must consider whether the error was harmless beyond a reasonable doubt. The Supreme Court of Ohio has held that error is harmless if "there is no reasonable possibility that the evidence may have contributed to the accused's conviction." State v. Bayless (1976), 48 Ohio St.2d 73, paragraph seven of the syllabus. The Supreme Court of Ohio has also stated that it is appropriate to find error harmless where there is "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction."State v. Ferguson (1983), 5 Ohio St.3d 160, 166, fn 5. See, also, Crim.R. 52(A) (harmless error defined as "any error, defect, irregularity, or variance which does not affect substantial rights * * *.") To find harmless error, a reviewing court must be able to "declare a belief that the error was harmless beyond a reasonable doubt." Bayless, 48 Ohio St.2d 73, at paragraph seven of the syllabus. The Supreme Court of Ohio, cautioning against cavalier application of the doctrine, noted that it is not the role of the reviewing court to sit as a trier of fact or to speculate on the outcome of the trial if the case were to be re-tried without the inadmissible testimony. State v.Rahman (1986), 23 Ohio St.3d 146, 151, fn 4. Instead, it is the job of the reviewing court to "assess the impact" of the inadmissible testimony on the jury. Id.
{¶ 42} Courts have found error not to be harmless where the evidence, after excluding the inadmissible testimony, is conflicting and requires the jury to judge witness credibility, see, e.g., State v. Deyling (Jan. 28, 1998), 9th Dist. No. C.A. 2672-M, or where the only remaining evidence is circumstantial, see, e.g., Rahman, 23 Ohio St.3d at 150. However, courts have not hesitated to find that error is harmless where the excluded evidence is merely cumulative to other compelling evidence, see, e.g., State v. Fenton (1990), 68 Ohio App.3d 412, 428, or where other evidence overwhelmingly proves the defendant's guilt, see, e.g., Bayless, 48 Ohio St.2d at 107.
{¶ 43} In Williams, supra, the court held that the error in excluding the testimony of two witnesses regarding the victim's prior statements regarding her desire to see the appellant go to jail was not harmless because the credibility of the victim was crucial to the prosecution's case. The court determined that the jury obviously did not entirely believe the victim because they acquitted the appellant on the burglary charge. Id. at 598.
{¶ 44} In the present case, in contrast to Williams, the error is harmless. Unlike Williams, appellant's trial counsel did elicit testimony from the victim on cross examination which gave an impression of a deeper relationship between the victim and appellant, and thus, put some questions concerning the victim's credibility as to her earlier testimony before the jury. Although the victim did not directly admit that a "big fight" resulted from appellant's repeated discussion about his desire to be with a younger woman, she testified that she forced appellant to move out after he repeatedly brought up the subject. Further, the victim admitted that while appellant was still in prison and about to be released, she told appellant that she loved him and missed him. Although she qualified this as "friendship love," the point was made, coupled with the facts that the victim invited appellant to live with her and she had sexual relations with appellant the night he was released, that the victim may have viewed the appellant as more than a mere "friend." Further, she admitted that she had told appellant's mother that she was counting the days until appellant's release, "so I could get out and help him." The victim also admitted that "at first," appellant was more hesitant to enter into a relationship with her than she was with him. In addition, the proffered prior statements of the victim in Williams went directly to her alleged motive to "see that defendant would go to jail." In the present case, because of the above cited admissions and testimony of the victim on cross-examination, the proffered prior statements of the victim's love for appellant are cumulative evidence of the victim's feelings for appellant. Thus, these prior statements are also cumulative in their effect of impeaching the victim's credibility. See State v. Gondor, 11th Dist. No. 2002-P-0073, 2004-Ohio-7219; State v. Resh, 11th Dist. No. 2002-P-0074, 2004-Ohio-7220; State v. Crawford (Feb. 6, 1986), 10th Dist. No. 85AP-324. Accordingly, appellant's second assignment of error is not well-taken.
{¶ 45} In his third assignment of error, appellant asserts that he was denied the effective assistance of counsel. The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense.Strickland v. Washington (1984), 466 U.S. 668, 686-687. In essence, appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
{¶ 46} Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner. State v. Hamblin
(1988), 37 Ohio St.3d 153, 155-56. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips,74 Ohio St.3d 72, 85, 1995-Ohio-171. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 48-49. Finally, reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners. Strickland, supra at 689; State v. Keenan,81 Ohio St.3d 133, 152, 1998-Ohio-459.
{¶ 47} In the present case, appellant contends that he was denied effective assistance of counsel in two ways: (1) appellant's trial counsel did not effectively argue the inconsistencies that existed between testimony of the victim at the first trial and the final trial, and; (2) appellant's trial counsel failed to more vigorously object to the state's misstatements of the law regarding impeachment rules, persuading the trial court to frustrate his cross-examination of the victim, as well as limit his direct examination of appellant's mother.
{¶ 48} First, we note that we have concluded that the trial court did not err in excluding the victim's prior trial testimony at issue in appellant's first assignment of error. Second, given that Reyes was not decided until nine days after the trial ended, appellant's trial counsel cannot be faulted for failing to more vigorously argue the inapplicability of Crim.R. 16(B)(1)(g) to the victim's prior trial testimony. Finally, we have concluded that it was not defense counsel's error, but rather, the trial court's error that limited appellant's mother's testimony concerning the victim's prior statements relative to her feelings for appellant. However, we also concluded that such error was harmless. Therefore, we conclude that appellant's trial counsel's performance was not deficient and his assistance was not ineffective. Accordingly, appellant's third assignment of error is not well-taken.
{¶ 49} Upon due consideration, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal for which sum judgment is rendered against appellant on behalf of Wood County and for which execution is awarded. See App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Skow, J., concur.