The STATE of Ohio, Appellee,

v.

HUSSELN, a.k.a. Tabaja, Appellant.*

[Cite as *State v. Husseln,* 152 Ohio App.3d 67, 2003-Ohio-1369.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020155.

Decided March 21, 2003.

---

* Reporter's Note: The court sua sponte removed this case from the accelerated calendar.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Thomas J. Boychan Jr., Assistant Prosecuting Attorney, for appellee.

Dominic J. Mastruserio, for appellant.

DOAN, Judge.

{¶ 1} The defendant-appellant's name is listed on the notice of appeal as Tabaja Husseln, but the record reveals that his name is Hussein Tabaja. We refer to the defendant-appellant as Hussein Tabaja.

{¶ 2} Tabaja has appealed his conviction for domestic violence, in violation of R.C. 2919.25(A). On December 5, 2001, Tabaja and the victim, his ex-wife, were sleeping in the same house, but they had separate bedrooms. The victim testified that Tabaja started calling her names and "spanking" her face with an open hand. Tabaja testified that the victim walked into his bedroom and demanded money in an angry and hostile manner. Tabaja gathered his belongings to leave, but the victim took them from him. Tabaja testified that he had no physical contact with the victim. He also stated that, at the victim's insistence, he gave her two checks totaling $620 and then left for work.

{¶ 3} At about 10:44 a.m., the victim called Tabaja at work and asked him to give her a ride to the bank and to a store. Tabaja picked up the victim and drove her on her errands. Later, at about 2:00 p.m., the victim again telephoned Tabaja at work to ask for transportation to Tri–County Mall. Tabaja drove her to the mall.

{¶ 4} At about 5:00 p.m., a friend drove the victim to Tabaja's workplace so that she could drop off the bags containing Tabaja's belongings. Tabaja had

already left for the day. Tabaja's brother and another witness saw the victim and did not notice any marks on her face.

{¶ 5} When the victim returned home, Tabaja was at the house. Tabaja testified that the victim ordered him out and threatened to call the police if he did not leave. Tabaja stated that he left immediately. The victim testified that when she came home, Tabaja began "yelling" at her. She then called police to report the alleged slapping that had occurred that morning. The victim went to the hospital and reported to doctors that Tabaja had punched her in the face.

{¶ 6} While testifying at trial, the victim initially stated that she did not call Tabaja for a ride during the day. When confronted with telephone records showing that she had called Tabaja, the victim admitted that he had provided transportation for her on two occasions that day. The victim also stated, "He's my husband. He is supposed to support me and my family. I'm not supposed to work third shift when he is multimillionaire."

{¶ 7} We first address Tabaja's second assignment of error, which alleges that the trial court erred in refusing to admit evidence that the victim had previously filed five false domestic-violence charges against Tabaja that had resulted in either dismissals or acquittals. When defense counsel attempted to question the victim about the previous charges, the trial court sustained the prosecutor's objection. Tabaja proffered the evidence into the record.

{¶ 8} Under Evid.R. 608(B), a defendant is permitted, in the court's discretion, to cross-examine a victim about prior false accusations if they are clearly probative of truthfulness or untruthfulness. See *State v. Boggs* (1992), 63 Ohio St.3d 418, 588 N.E.2d 813; *State v. Fredrick,* 2d Dist. No. 18996, 2002-Ohio-1195, 2002 WL 360643. In *Fredrick,* the defendant had been convicted of domestic violence for allegedly hitting his estranged wife on the side of the head. At trial, the defense had attempted to introduce evidence of a prior false accusation of domestic violence made by the victim against the defendant. Defense counsel attempted to show that the victim had engaged in a pattern of accusing the defendant of domestic violence, and that the cases had been dismissed or the police had refused to file charges after an investigation. The trial court refused to admit the evidence. The Second Appellate District held that the trial court erred in refusing to admit the evidence, stating that the trial court's discretion was not absolute and that the court had abused its discretion in refusing to allow defense counsel to question the victim about the prior false accusations. The appellate court held that if it could be shown that the victim had made false accusations in the past, "it would have been highly probative of her truthfulness or untruthfulness with respect to the present charge of Domestic Violence." See *State v. Fredrick,* supra, at ¶ 23. In addition, the appellate court

held that evidence of the prior false accusations would also have been admissible under Evid.R. 616(A) to show the victim's bias, prejudice, interest, or motive for misrepresentation.

{¶ 9} We agree with the reasoning of the *Fredrick* court. We hold that the trial court erred in refusing to admit evidence of the prior false domestic-violence charges because it was highly probative of whether the victim was telling the truth in this instance. See Evid.R. 608(B). Further, we hold that the evidence was admissible under Evid.R. 616(A) to show the victim's bias, prejudice, interest, or motive for misrepresentation. The second assignment of error is sustained.

{¶ 10} Tabaja's first assignment of error, which alleges that his conviction was against the manifest weight of the evidence, is also sustained.

{¶ 11} The victim testified in court that Tabaja had hit her with an open hand, but she told doctors that he had punched her in the face. The victim initially testified that she had not telephoned Tabaja for transportation on the day she alleged that he had slapped her, but she changed her testimony when confronted with telephone records showing that she had called Tabaja at work. Two witnesses testified that they had seen the victim at approximately 5:00 p.m. and that they had not observed any marks on her face. The victim stated that when she called the police in the evening, she had blood coming out of her ears. This was about 12 hours after the alleged slapping, and after the victim had been with Tabaja throughout the day. Despite the victim's claims that she was in pain all day and that she had blood coming out of her ear, she went shopping, ran errands, and went to the bank to cash the checks Tabaja had given her. The victim also testified that she had called the police to protect herself, but she apparently had no fear of Tabaja earlier in the day when he drove her on her errands.

{¶ 12} We have reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of the witnesses, and concluded that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice such that Tabaja's conviction must be reversed and a new trial ordered. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. The first assignment of error is sustained.

{¶ 13} Therefore, the judgment of the trial court is reversed, and this cause is remanded for a new trial and for further proceedings consistent with law and this decision.

Judgment reversed<br/>and cause remanded.

PAINTER, P.J., and SUNDERMANN, J., concur.