[Cite as *State v. Hunt*, 2014-Ohio-3839.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

DALE HUNT

     Defendant-Appellant


Appellate Case No.    2013-CA-79

Trial Court Case No.   2013-CRB-1218


(Criminal Appeal from
 Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of September, 2014.

. . . . . . . . . . .

RONALD C. LEWIS, Atty. Reg. No. 0061980, City of Xenia Prosecuting Attorney, 101 North Detroit Street, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}   Defendant-appellant, Dale R. Hunt, appeals from his conviction and sentence in the Xenia Municipal Court after a jury found him guilty of violating a protection order.  For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2}   On July 11, 2013, Hunt was charged with one count of violating a protection order in violation of R.C. 2919.27, a misdemeanor of the first degree.  The charge arose from Hunt allegedly driving by the residence of his ex-girlfriend, Diana Sweet, after Sweet had obtained a civil stalking protection order against him.   Hunt pled not guilty to the charge, and on December 19, 2013, the matter proceeded to a jury trial.

{¶ 3}   At trial, it was established that Hunt and Sweet were in a romantic relationship for approximately five months.  During their relationship, Hunt regularly visited Sweet at her residence on Reid Avenue in Xenia, Ohio.  Hunt and Sweet's relationship ended in January 2013, and on June 3, 2013, Sweet obtained a civil stalking protection order against Hunt from the Greene County Domestic Relations Court.  Among other restrictions, the protection order prohibited Hunt from being within 500 feet of Sweet.

{¶ 4}   During trial, Sweet testified that she personally informed two of her neighbors, Rebecca Anderson and Ralph Patrick, about the protection order she obtained against Hunt.  She also testified that she provided Anderson and Patrick with a picture of Hunt and a list of his vehicles so they could help her watch out for him.  The list of vehicles included a "white work van" a "silver, CVR [sic] Honda," and a green "Stealth."  Trial Trans. (Dec. 19, 2013), p. 12.

Sweet claimed that she provided this information to her neighbors because she was concerned for her safety.

**{¶ 5}** Continuing, Sweet testified that after she informed her neighbors about Hunt, she received a telephone call from Patrick on the evening of July 11, 2013, that prompted her to look outside her front door. Sweet testified that when she stepped outside, she saw Hunt drive past her house one time in his silver Honda CRV. According to Sweet, Hunt made no gestures or verbal contact, but she claimed that she saw his face and that he was looking at her as he drove by. Sweet further testified that her home is located on a residential street that is not a main road. In response to seeing Hunt, Sweet called 9-1-1 and provided a copy of the protection order and a witness statement to the responding officer.

**{¶ 6}** Patrick, who lives two houses down from Sweet, also testified at trial, and confirmed that Sweet had given him a picture of Hunt and a list of his vehicles. Patrick testified that he called Sweet around 8:30 p.m. on July 11, 2013, to inform her that Hunt was in the neighborhood. Specifically, Patrick testified that on the day in question, he was sitting on his front porch when he saw Hunt slowly drive by their houses in a silver vehicle. Patrick testified that he saw Hunt drive by twice that evening and called Sweet after seeing him the second time. Patrick admitted that he never socialized with Hunt and knew him only from the photograph given to him by Sweet. However, Patrick testified that he saw Hunt's face as he drove by and recognized him from the photograph. Like Sweet, Patrick did not see Hunt make any gestures or verbal contact as he drove by.

**{¶ 7}** In addition to Sweet and Patrick, the State presented testimony from Sergeant Peter Wiza of the Xenia Police Department. Wiza testified that he was dispatched to Sweet's

residence on the evening of July 11, 2013, in reference to a protection order violation and that he interviewed both Sweet and Patrick that evening. He also testified that he had heard all of Sweet and Patrick's trial testimony and indicated that their testimony was consistent with what they had told him during their interviews. Additionally, Wiza testified that the measurement between Sweet's residence and Reid Avenue was approximately 48 feet, and that the protection order prohibited Hunt from being within 500 feet of Sweet. He further testified that Hunt was located by the Beavercreek Police Department at his residence in Beavercreek, Ohio later that evening.

{¶ 8} After the State rested its case, Hunt moved for a Crim.R. 29 acquittal on grounds that the State had failed to present sufficient evidence of a protection order violation. The trial court overruled the motion, and Hunt thereafter decided to testify in his defense. During his testimony, Hunt confirmed his relationship with Sweet had ended in January 2013 and that he knew where she lived. He also confirmed that he was present at the hearing in which the protection order was issued and that he was represented by counsel. Additionally, Hunt testified that he had never met Patrick and that he did not drive by Sweet's residence on the evening of July 11, 2013. He further noted that he was not apprehended anywhere near Sweet's residence that evening.

{¶ 9} After deliberation, the jury found Hunt guilty of violating the civil stalking protection order at issue. At sentencing, the trial court imposed a prison sentence of 180 days and suspended 120 days on the condition that Hunt has no future violations within five years and successfully completes a term of probation not to exceed two years. The trial court also imposed a $500 fine plus court costs.

{¶ 10} Hunt now appeals from his conviction and sentence, raising three assignments of

error for review.

## Assignments of Error Nos. I and II

{¶ 11} Because they are interrelated, we will address Hunt's First and Second Assignments of Error together.   They are as follows.

I.      THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.     THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 12}   Under the foregoing assignments of error, Hunt challenges the manifest weight and legal sufficiency of the evidence to sustain his conviction for violating a protection order. Specifically, Hunt argues that his conviction was against the manifest weight of the evidence because Sweet and Patrick's testimony was the only evidence of a protection order violation, and that their testimony contained too many inconsistencies to be credible.   Hunt also argues Sweet and Patrick's testimony does not sufficiently demonstrate that he violated the protection order.

{¶ 13}   As a preliminary matter, we note that "[a] challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence."   *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69.   "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   "When reviewing a claim as to sufficiency of

evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id*.

{¶ 14} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 15} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court

will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." (Citation omitted.) *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 16} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 17} The offense at issue in this case–violating a protection order–is codified under R.C. 2919.27(A)(1), which states that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code." Pursuant to R.C. 2901.22(C), "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶ 18} With the foregoing standards in mind, we conclude that Hunt's conviction is not against the manifest weight of the evidence and is necessarily supported by sufficient evidence. There is no dispute that a civil stalking protection order was issued against Hunt on June 3, 2013, and that Hunt was aware of the protection order. The protection order was admitted and read into evidence and it explicitly stated that Hunt shall not be present within 500 feet of Sweet. Patrick, who lives two doors down from Sweet, testified that on the evening of July 11, 2013, he

saw Hunt drive by his and Sweet's house two times. Sweet also testified that after receiving a telephone call from Patrick, she saw Hunt drive by her house once that same evening. Both Sweet and Patrick testified that they identified the driver as Hunt because they saw and recognized his face. Sergeant Wiza also testified that the distance from the street and Sweet's house was 48 feet.

{¶ 19} Based on the foregoing evidence, we cannot say the jury lost its way in finding that Hunt recklessly violated the protection order. The record includes evidence demonstrating that Hunt knew the protection order existed and that he decided to come within 500 feet of Sweet anyway. While we agree that there are some inconsistencies in Sweet and Patrick's testimony, the inconsistencies were either immaterial or were clarified later on in their testimony.[1] Moreover, Wiza testified that he did not find their trial testimony to be inconsistent with what they had reported during their interviews with him. Regardless, we defer to the jury's decision as to the credibility of the witnesses. The fact that the jury believed Sweet and Patrick's version of events over Hunt's does not render his conviction as being against the manifest weight of the evidence.

{¶ 20} Hunt's First and Second Assignments of Error are overruled.

## Assignment of Error No. III

---

[1] Hunt took issue with the fact that Sweet testified she received Patrick's call at 5:30 or 6:30 p.m. and Patrick testified that he called Sweet at 8:30 p.m. Hunt also took issue with the fact that Patrick referred to his vehicle as a "CVR" in his witness statement as opposed to a "CRV." Additionally, Hunt attempted to make an issue out of the fact that Sweet testified she did not have any assistance in filling out her witness statement when her statement included information and formal language that indicated otherwise. In referring to Wiza's interview notes, Hunt also claimed that Patrick erroneously told Wiza that he knew Hunt prior to the night in question; however, Patrick later explained that he knew him from the photograph, not personally.

**{¶ 21}** Hunt's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED AND DENIED APPELLANT A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS BY RESTRICTING CROSS-EXAMINATION.

**{¶ 22}** Under his Third Assignment of Error, Hunt contends that he was denied a full, effective cross-examination when the trial court prohibited his counsel from questioning Sweet about the outcome of prior allegations she made against Hunt for criminal trespass and telephone harassment in Xenia Municipal Court Case No. 13 CRB 00282. Specifically, after Sweet confirmed that she had made the prior allegations, the trial court prohibited defense counsel from asking whether the allegations were later dismissed, as the court found that line of questioning irrelevant. Hunt contends that the purpose of this line of questioning was relevant in assessing Sweet's character for truthfulness or untruthfulness and in impeaching her credibility. He claims that such evidence is admissible under Evid.R. 404(A)(2).

**{¶ 23}** Pursuant to Evid.R. 404(A)(2), "evidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible. However, Evid.R. 405 limits the permissible methods of proving character to reputation and opinion testimony and inquiries about specific instances of conduct. Specifically, Evid. R. 405(A), states that "[o]n cross-examination inquiry is allowable into relevant specific instances of conduct."

**{¶ 24}** "Evid.R. 608(B) provides that a witness may, in the court's discretion, be cross-examined as to specific instances of a witness's conduct concerning the witness's character for truthfulness if the conduct is 'clearly probative of truthfulness or untruthfulness.' " *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 126. The rule states that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Evid.R. 608(B). We stress that Evid.R. 608(B) requires the conduct inquired about to be "clearly probative of truthfulness or untruthfulness" to be appropriate for questioning on cross-examination. If the evidence sought to be elicited is not clearly probative of the witness's truthfulness or untruthfulness, the trial court does not abuse its discretion in precluding cross-examination. *See Conway* at ¶126.

{¶ 25} In *State v. Fredrick*, 2d Dist. Montgomery No. 18996, 2002WL360643 (Mar. 8, 2008), this court applied Evid.R. 608(A) to a set of facts similar to the case at bar. *Fredrick* involved an appeal from a domestic violence conviction, and during the cross-examination of the complaining witness, the State objected to a question concerning a prior accusation of domestic violence. *Id*. at *1. In response to the objection, the defense explained that it was attempting to elicit evidence demonstrating that the victim had engaged in a pattern of charging the defendant with domestic violence and that the charges were either dismissed or no charges were filed because the police found no evidence of violence. *Id*. at *2. The trial court sustained the State's objection because it found that line of questioning irrelevant. *Id*.

**{¶ 26}** On appeal, the defendant in *Fredrick* argued that the trial court erred when it sustained the objection, because the question was intended to elicit evidence showing that the complaining witness had previously made false charges of domestic violence against him. *Id*. at *3. This court held that:

> A defendant is permitted under Evid.R. 608(B) in the court's discretion, to cross-examine a victim regarding false accusations if they are clearly probative of truthfulness or untruthfulness. *State v. Boggs* (1992), 63 Ohio St.3d 418, at 421, 588 N.E.2d 813. Although the decision whether to permit cross-examination of a victim regarding false accusations is left to the trial court's discretion, that discretion is not absolute. We cannot know whether Fredrick's attorney would have succeeded in her attempt to establish, in her cross-examination of Ms. Fredrick, that Ms. Fredrick had made false accusations of Domestic Violence against Mr. Fredrick in the past. We conclude, however, that the trial court abused its discretion by preventing Fredrick's attorney from pursuing this line of questioning. If it could have been shown that the complainant had made false accusations of Domestic Violence against Fredrick in the past, that would have been highly probative of her truthfulness or untruthfulness with respect to the present charge of Domestic Violence. Although the parties do not argue the point, Ms. Fredrick's prior false accusations against her husband, if shown, would also have been admissible to show her bias, prejudice, interest, or motive to misrepresent, pursuant to Evid.R. 616(A).

> We conclude that the trial court abused its discretion by preventing

Fredrick from cross-examining Ms. Fredrick on the subject of prior false accusations of Domestic Violence.

*Fredrick* at *3.

**{¶ 27}** Similarly, in *State v. Husseln*, 152 Ohio App.3d 67, 2003-Ohio-1369, 786 N.E.2d 536 (1st Dist.), the trial court refused to admit evidence that the victim had previously filed false domestic-violence charges against the defendant that had resulted in either dismissals or acquittals. The First District Court of Appeals agreed with the reasoning in *Fredrick* and held "that the trial court erred in refusing to admit evidence of the prior false domestic-violence charges because it was highly probative of whether the victim was telling the truth in this instance." *Id.* at ¶ 9, citing Evid.R. 608(B).

**{¶ 28}** The case before us is distinguishable from *Fredrick* and *Husseln* because those cases involved eliciting evidence of *false* prior allegations, which is clearly probative of the victim's untruthfulness. In this case, Hunt's trial counsel never indicated that he was going to elicit testimony showing that Sweet's prior allegations against Hunt were dismissed because they were false. Instead, Hunt's counsel explained that: "I'm trying to proffer the fact that part of the allegation here is that it's based on her word. I think prior allegations made by her that are ultimately dismissed go to her credibility." Trial Trans. (Dec.19, 2013), p. 28. Accordingly, the record indicates that Hunt's trial counsel was attempting to cross-examine Sweet on her character for truthfulness or untruthfulness by eliciting evidence showing that her prior charges were dismissed.

**{¶ 29}** The dismissal of a witness's prior charges, however, is not clearly probative of the witness's character for truthfulness or untruthfulness, as charges can be dismissed for many

reasons other than being unfounded. Asking Sweet whether her prior allegations were dismissed because they were determined to be false would have been appropriate under the rule, as that would be clearly probative of truthfulness or untruthfulness. However, that is not what counsel asked, and that is not what he told the trial court he was going to elicit. We further note that the docket in Case No. 13 CRB 00282 indicates that the telephone harassment and criminal trespass case was settled at a hearing and resulted in a disposition of not guilty. Again, that outcome is not clearly probative of Sweet's truthfulness or untruthfulness, as it does not necessarily indicate her allegations were false.

{¶ 30} Because the outcome of Sweet's prior allegations in Case No. 13 CRB 00282 is not relevant to her veracity, it is not a proper subject for cross-examination under Evid.R. 608(B). *See Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996 at ¶ 126 (finding that facts concerning a prior criminal case that defendant sought to elicit from the witness were not the proper subject of cross-examination under Evid.R.608(B), because they were not relevant to the witness's veracity). Accordingly, we do not find the trial court abused its discretion when it prohibited Hunt's counsel from pursuing this line of questioning.

{¶ 31} Hunt's Third Assignment of Error is overruled.

### Conclusion

{¶ 32} Having overruled all of Hunt's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J., concur.

Copies mailed to:

Ronald C. Lewis
Jay A. Adams
Hon. Michael K. Murry