[Cite as *State v. Dyer*, 2017-Ohio-8758.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27384 |
| | : | |
| v. | : | T.C. NO. 16-CRB-4915 |
| | : | |
| **LANCE DYER** | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 1st day of December, 2017.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

MISTY M. CONNORS, Atty. Reg. No. 0075457, 3451 Dayton-Xenia Road, P.O. Box 34246, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Lance Dyer was convicted after a jury trial in the Dayton

Municipal Court of menacing, a misdemeanor of the fourth degree. Dyer appeals from his conviction, claiming that the trial court abused its discretion in precluding him from presenting evidence of alleged prior false allegations by the complainant and in excluding a defense witness as a discovery sanction. For the following reasons, the trial court's judgment is affirmed.

## I. Background and Procedural History

{¶ 2} According to the State's evidence at trial, Cassandra Porter, the complainant, and Dyer were married for 12 years. They have three children. During the relevant time period, the couple's two sons were 17 and 15 years old and their daughter was 8 years old. Porter also has two adult daughters from a prior relationship. Porter and Dyer divorced several years ago. In 2016, Porter was the custodial parent, and Dyer had visitation rights for the couple's children.

{¶ 3} In May 2016, Porter contacted Dyer by text message to invite him to attend her 19-year-old daughter's high school graduation and their middle child's graduation from middle school to high school. Dyer attended the high school graduation, but did not attend the middle school graduation. Dyer texted Porter that he would not be exercising his visitation rights that weekend, and he would let Porter know when he could next see the children. (Copies of the text messages between Porter and Dyer were admitted as State's Exhibits 1-4.) Dyer did not attempt to see his children for the rest of May, all of June, and part of July.

{¶ 4} In July 2016, Dyer purchased a bicycle for the couple's youngest child, and he delivered the bicycle to the home of Porter's mother, Renzola Cunningham. Cunningham and Porter believed that the bicycle was too large for the child, and on July

12, Porter texted Dyer to pick up the bicycle and to take their daughter to the store to purchase an appropriately-sized bike.

{¶ 5} On the morning of July 18, 2016, Dyer replied to Porter that he wanted to see his children on the upcoming Friday and that he would take Porter to court if necessary. Porter became upset at Dyer's suggestion that he would need to go to court to see his children, given that he had elected not to exercise his visitation since May; Porter responded that she would think about letting the children come over.   At approximately 6:00 p.m. that evening, Porter texted Dyer that he needed to retrieve the bicycle from her mother's house "asap."   (Copies of the July text messages were admitted as Defendant's Exhibits 1-3.)

{¶ 6} Dyer drove to Cunningham's home on the evening of July 18, 2016. Cunningham, Porter, and the couple's 15-year-old and 8-year-old children were there when Dyer arrived.   Porter testified that Dyer appeared to be intoxicated.   Dyer initially spoke with his children while Porter sat on the front porch.   Dyer then asked Porter if their 15-year-old son could drive his car; Porter said no, because their son did not have a temporary driver's license.   Over Porter's objections, Dyer permitted their son to drive his car for approximately ten minutes.

{¶ 7} An argument ensued after Dyer and the son returned.   Porter told her son to go in the yard with his younger sister.   As the argument escalated, Porter told her son to take his sister inside the house.

{¶ 8} Porter testified that Dyer ultimately stated that he "was gonna kick [her] ass and he was gonna come over to [her] house with his piece and shoot [her]."   (Tr. at 48.) Cunningham likewise testified that she heard Dyer say that "he was gonna get a gun and

he was gonna come back and whip her ass and he was gonna take the kids." (*Id.* at 80.) Porter testified that she believed Dyer's threats, because of "the nature of how he threatened me and how he was looking when he said what he said to me." (*Id.* at 49.)

{¶ 9} After Dyer threatened her, Porter called the police. (The 911 call, Defendant's Exhibit 4, was played for the jury.) Cunningham, who had heard the threat, yelled at Dyer and told him to leave. Dyer left after approximately five or ten minutes, before the police responded. After the police arrived and Porter made a report, Porter took her children home. She testified that she stayed up all night in her living room, in case Dyer came over.

{¶ 10} On July 20, 2016, Dyer was charged by complaint with aggravated menacing, a first-degree misdemeanor, and menacing, a fourth-degree misdemeanor. Dyer pled not guilty and demanded a jury trial. The trial court's original pre-trial order, entered on August 31, 2016, set a discovery deadline of September 7, required the parties to file witness lists by September 22, and scheduled the trial for October 7. On September 7, 2016, Dyer filed a motion for an extension of the discovery deadline to September 21, 2016. The trial court granted the motion. On September 23, the State filed a motion to extend the discovery deadline to September 30. The court also granted this motion.

{¶ 11} On September 23, 2016, Dyer filed a motion in limine, seeking a ruling that evidence of Porter's prior domestic violence protection order complaints against Dyer, all of which were resolved by dismissal or a judgment in Dyer's favor, were admissible at trial. Dyer asserted that the evidence was admissible under Evid.R. 608(B) and/or Evid.R. 616(A). The State opposed the motion and sought to prohibit counsel and

witnesses from mentioning the prior allegations.

{¶ 12} The State filed its witness list on September 30, 2016. On October 3, a pretrial conference was held. Because of an error in summoning potential jurors for the trial, the court rescheduled the jury trial for October 14, 2016.

{¶ 13} On October 4, 2016, the trial court overruled Dyer's motion in limine, finding that "the proposed evidence, at this time, does not indicate false allegations or bias, prejudice, or motive for misrepresentation on the part of the Complaining Witness." The court ordered that the proposed evidence not be admitted and that there "be no reference to the proposed evidence during voir dire, opening statements, or at any time until after the State has completed their examination of the Complaining Witness." The court further ordered that, "[s]hould it become apparent after the examination of the Complaining Witness that any of the proposed evidence should be allowed, a sidebar shall be requested, the Jury excused, and a ruling made as to which evidence may be admitted and used for cross-examination."

{¶ 14} On October 5, 2016, Dyer filed a motion to file his witness list out of time, requesting permission to file his witness list by October 11, 2016. The motion included a witness list naming Dyer's two teenaged sons and Keisha Jackson; the witness list did not indicate the nature of Jackson's testimony or her relationship to Dyer. A subpoena was issued for Jackson on October 7. On October 11, the State objected to the untimely notice of witnesses, asserting that it did not receive notice of Dyer's intended witnesses until October 10, and that it would not have a meaningful opportunity to investigate or interview Jackson (who was unknown to the State) or Dyer's oldest son (who was not at his grandmother's house on July 18, 2016) prior to trial.

{¶ 15} On October 13, 2016, an acting judge found the State's objection to Dyer's witnesses to be well-taken. The court's entry indicated that the court had discussed the matter with counsel, and that counsel was told that the witnesses filed out-of-time would not be allowed to testify at the October 14 trial. The entry further indicated that Dyer could request a continuance if the witnesses were crucial to his defense. Dyer was given a deadline of October 12 to request a continuance. No continuance was requested.

{¶ 16} The matter proceeded to trial before the acting judge on October 14, 2016. After a jury was selected, but before opening statements, the State reminded the court that a defense witness had been excluded due to the untimeliness of Dyer's revealing the witness's identity, and the prosecutor described the prior off-the-record discussions between counsel and the trial court regarding that witness. Dyer reiterated his objection to the trial court's ruling on that issue. Dyer also reiterated his objection to the trial court's ruling on his motion in limine regarding Porter's prior accusations against him. The trial court reaffirmed its prior rulings. At that time, Dyer proffered the evidence that would have been presented regarding Porter's prior allegations against him. A proffer of Jackson's testimony occurred prior to closing statements.

{¶ 17} At trial, the State presented two witness -- Porter and Cunningham. Their testimony, detailed above, indicated that Porter and Dyer had argued at Cunningham's residence on July 18, 2016, and that Dyer had threatened Porter. Dyer presented two defense witnesses -- himself and the couple's 15-year-old son. The son testified that his father (Dyer) came to get his sister's bike, that Dyer asked him if he wanted to drive Dyer's car, and that he drove the car around the block. The son testified that, after returning to the house, Dyer put the bike in his car and his parents started to argue. The son did not

hear his father threaten his mother on July 18, and he testified that he has never seen his father with a gun. Dyer testified that Porter was upset that he had tried to teach their daughter how to ride the bike, and he stated that Porter did not object to their son's driving his car until after he and the son returned. Dyer denied that he was intoxicated and that he had threatened Porter.

{¶ 18} After deliberations, the jury found Dyer guilty of menacing, but not guilty of aggravated menacing. The court ordered a presentence investigation (PSI).

{¶ 19} On November 28, 2016, the trial court orally sentenced Dyer to 30 days in jail (all of which were suspended) and a $250 fine (all of which was suspended), and ordered him to pay court costs. Dyer was placed on probation for one year and ordered to attend anger management classes and parenting classes, to obtain a drug and alcohol assessment/treatment, and to have no contact with Porter, except as necessary regarding their children. The trial court's judgment entry was filed on December 1, 2016. The trial court stayed Dyer's sentence pending the outcome of his appeal.

{¶ 20} Dyer appeals from his conviction, raising two assignments of error.

**II. Exclusion of Prior False Allegations by Complainant**

{¶ 21} Dyer's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING EVIDENCE OF THE COMPLAINING WITNESS'S PRIOR TESTIMONY AND PRIOR UNSUBSTANTIATED COMPLAINTS ABOUT THE DEFENDANT.

{¶ 22} Dyer sought to introduce documents from five separate domestic violence protection order cases filed by Porter against Dyer. Specifically, he sought to introduce:

- Montgomery C.P. No. 2001 DV 591

  - the ex parte domestic violence protection order issued in favor of Porter and against Dyer (July 23, 2001) (Exhibit 5)

  - Porter's motion to dismiss the case (Aug. 9, 2001) (Exhibit 6)

  - the trial court's dismissal entry for want of prosecution (Sept. 4, 2001) (Exhibit 6)

- Montgomery C.P. No. 2013 DV 389

  - the ex parte domestic violence protection order issued in favor of Porter and against Dyer (Apr. 9, 2013) (Exhibit 7)

  - the trial court's dismissal entry, based on Porter's consent to termination of the protection order (Apr. 23, 2013) (Exhibit 8)

- Montgomery C.P. No. 2013 DV 791

  - the ex parte domestic violence protection order issued in favor of Porter and against Dyer (July 5, 2013) (Exhibit 9)

  - the trial court's dismissal entry after a full hearing, finding that Dyer "credibly denie[d] calling and threatening [Porter]" and concluding that Porter had failed to prove that Dyer had committed domestic violence (Aug. 7, 2013) (Exhibit 10)

- Montgomery C.P. No. 2013 DV 1261

  - the ex parte domestic violence protection order issued in favor of Porter and against Dyer (Oct. 9, 2013) (Exhibit 11)

  - a transcript of the ex parte hearing (Oct. 9, 2013) (Exhibit 12)

  - the trial court's dismissal entry, sustaining Dyer's objections to the

magistrate's ruling and dismissing case for lack of evidence of domestic violence (Jan. 29, 2014) (Exhibit 13)

- Montgomery C.P. No. 2015 DV 1374

  o the ex parte domestic violence protection order issued in favor of Porter and against Dyer (Nov. 2, 2015) (Exhibit 14)[1]

With the exception of the 2001 case, all of the domestic violence protection order cases were filed after Dyer and Porter separated.

**{¶ 23}** On appeal, Dyer claims that the trial court abused its discretion when it excluded evidence of Porter's prior allegations against him. Citing Evid.R 608(B), Dyer argues that he should have been permitted to present evidence of Porter's prior false accusations to demonstrate her untruthfulness. Dyer further claims that the same evidence was admissible, pursuant to Evid.R. 616, to demonstrate Porter's bias against him. Dyer primarily relies on *State v. Fredrick*, 2d Dist. Montgomery No. 18996, 2002 WL 360643 (Mar. 8, 2002), which he claims is nearly identical to the facts before us.

**{¶ 24}** Trial courts have discretion over the admission or exclusion of evidence, and we review the court's decision for abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. An abuse of discretion includes a situation in which a trial court did not engage in a 'sound reasoning process.' Abuse-of-discretion review is deferential and does not permit an

---

[1] Defense counsel also stated that he was proffering the trial court's dismissal entry, which allegedly dismissed the case following a full hearing for lack of evidence of domestic violence. This exhibit is not in the record.

appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 25} Evid.R. 608(B) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Evid.R. 608(B). Evid.R. 616, which addresses methods of impeachment, further provides that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Evid.R. 616(A).

{¶ 26} Beginning with Dyer's arguments related to Evid.R. 608(B), Evid.R. 608(B) expressly prohibits the introduction of extrinsic evidence of specific instances of conduct to attack or support a witness's credibility, with the exception of criminal convictions under Evid.R. 609. Accordingly, the trial court correctly excluded Dyer's proffered documents themselves. However, because the trial court also precluded any reference to the exhibits unless it "became apparent after examination of [Porter] that any of the proposed evidence should be allowed," we focus on whether Dyer should have been permitted to

cross-examine Porter about her prior allegations.

{¶ 27} We addressed the use of a witness's prior allegations against a defendant for impeachment in *Fredrick*, 2d Dist. Montgomery No. 18996, 2002 WL 360643 (Mar. 8, 2002). In that case, the defendant was charged with domestic violence, and at trial, he attempted to offer evidence of a psychologist who, according to the defendant's proffer, would have testified that the complainant, Fredrick's estranged wife, had said that the domestic violence charge was fabricated. The trial court also did not permit the defendant to cross-examine his wife with questions that were intended to elicit that she had previously made false charges of domestic violence against him. The jury convicted the defendant of domestic violence, and he appealed.

{¶ 28} On review, we concluded that the statements of the psychologist were privileged, and we affirmed the exclusion of the psychologist's testimony. However, we held that the trial court erred when it sustained objections to questions intended to elicit from the complainant that she had previously made false charges of domestic violence, reasoning that "[t]his testimony would be relevant and admissible to show the bias of the witness, as well as her credibility." We stated:

> A defendant is permitted under Evid.R. 608(B) in the court's discretion, to cross-examine a victim regarding false accusations if they are clearly probative of truthfulness or untruthfulness. *State v. Boggs* (1992), 63 Ohio St.3d 418, at 421, 588 N.E.2d 813. Although the decision whether to permit cross-examination of a victim regarding false accusations is left to the trial court's discretion, that discretion is not absolute. We cannot know whether Fredrick's attorney would have succeeded in her attempt to

establish, in her cross-examination of Ms. Fredrick, that Ms. Fredrick had made false accusations of Domestic Violence against Mr. Fredrick in the past. We conclude, however, that the trial court abused its discretion by preventing Fredrick's attorney from pursuing this line of questioning. If it could have been shown that the complainant had made false accusations of Domestic Violence against Fredrick in the past, that would have been highly probative of her truthfulness or untruthfulness with respect to the present charge of Domestic Violence. Although the parties do not argue the point, Ms. Fredrick's prior false accusations against her husband, if shown, would also have been admissible to show her bias, prejudice, interest, or motive to misrepresent, pursuant to Evid.R. 616(A).

*Fredrick*, at ¶ 3.

{¶ 29} The First District followed *Fredrick* in *State v. Husseln*, 152 Ohio App.3d 67, 2003-Ohio-1369, 786 N.E.2d 536 (1st Dist.), concluding that the trial court had erred in refusing to admit evidence of five prior charges of domestic violence by the complainant (the defendant's ex-wife) that had resulted in either dismissals or aquittals. *Husseln* at ¶ 7-9.

{¶ 30} We distinguished *Fredrick* and *Husseln* in *State v. Hunt*, 2d Dist. Greene No. 2013-CA-79, 2014-Ohio-3839. In *Hunt*, a jury found the defendant guilty of violating a protection order. On appeal, Hunt claimed that he was denied a full, effective cross-examination when the trial court prohibited his counsel from questioning the complainant about the outcome of prior allegations she made against him for criminal trespass and telephone harassment. Specifically, Hunt argued that, after the complainant admitted to

making the prior complaints, the trial court erred in disallowing, as irrelevant, defense counsel from asking if those allegations had been dismissed.

{¶ 31} In addressing Hunt's assignment of error, we noted that *Fredrick* and *Husseln* dealt with false prior accusations, which were "clearly probative of the victim's untruthfulness." *Hunt* at ¶ 28. In contrast, Hunt's trial counsel was attempting to cross-examine the complainant on her character for truthfulness or untruthfulness by eliciting evidence showing that her prior charges were dismissed. *Id.* We explained the distinction between those circumstances, stating:

> The dismissal of a witness's prior charges, however, is not clearly probative of the witness's character for truthfulness or untruthfulness, as charges can be dismissed for many reasons other than being unfounded. Asking [the complainant] whether her prior allegations were dismissed because they were determined to be false would have been appropriate under the rule, as that would be clearly probative of truthfulness or untruthfulness. However, that is not what counsel asked, and that is not what he told the trial court he was going to elicit. We further note that the docket in [the prior case] indicates that the telephone harassment and criminal trespass case was settled at a hearing and resulted in a disposition of not guilty. Again, that outcome is not clearly probative of [the complainant's] truthfulness or untruthfulness, as it does not necessarily indicate her allegations were false.

*Hunt* at ¶ 29.

{¶ 32} Upon review of *Fredrick*, *Hunt*, and additional relevant case law, we

conclude that the trial court did not abuse its discretion in determining that the proffered evidence was not admissible under Evid.R. 608(B). First, we agree with the trial court's decision to exclude evidence related to Montgomery C.P. No. 2001 DV 591 and Montgomery C.P. No. 2013 DV 389. The bases for the dismissal of those cases were lack of prosecution and Porter's consent to dismiss, respectively. As we stated in *Hunt*, charges can be dismissed for many reasons other than being unfounded, and neither of the bases in Montgomery C.P. No. 2001 DV 591 and Montgomery C.P. No. 2013 DV 389 reflects an indicia of untruthfulness. We likewise find no error in the trial court's exclusion of evidence regarding Montgomery C.P. No. 2015 DV 1374, for which we have only the ex parte complaint. The record contains no suggestion that Porter's allegations in that case were untruthful.

**{¶ 33}** Whether Dyer should have been permitted to question Porter about her prior allegations in Montgomery C.P. No. 2013 DV 791 and Montgomery C.P. No. 2013 DV 1261 presents a more difficult question. In both cases, the trial court determined that Porter had failed to establish domestic violence by Dyer and dismissed the complaints. Specifically, in Montgomery C.P. No. 2013 DV 791, the magistrate concluded that Dyer had credibly denied calling and threatening Porter, and in Montgomery C.P. No. 2013 DV 1261, the trial court concluded that the text messages allegedly sent to Porter by Dyer "[did] not reach the level of a threat of imminent serious physical harm."

**{¶ 34}** Unlike in *Fredrick*, however, where the complainant had previously admitted to fabricating a charge of domestic violence against her husband, nothing in Dyer's proffered evidence indicates that Porter admitted to fabricating her allegations. In Montgomery C.P. No. 2013 DV 1261, the court made no comment about Porter's

credibility. Rather, the court found that she did not support her allegations that Dyer had sent threatening text messages (no messages were admitted into evidence), and the court simply found that her allegations, even if true, did not meet the legal standard for domestic violence. Nothing suggests that her allegations were actually false and that Dyer did not engage in the alleged conduct. Accordingly, in this case, the trial court did not abuse its discretion in excluding evidence related to Porter's allegations in Montgomery C.P. No. 2013 DV 1261.

{¶ 35} Finally, unlike Montgomery C.P. No. 2013 DV 1261, the court addressed the relative credibility of Porter and Dyer in Montgomery C.P. No. 2013 DV 791. Because the court found Dyer more credible in that case, the trial court here could have reasonably permitted Dyer to question Porter about her prior allegation in that case. Nevertheless, we cannot conclude that the trial court abused its discretion when it precluded the admission of evidence regarding Porter's allegations in Montgomery C.P. No. 2013 DV 791. The trial court could have also reasonably concluded that the judgment in Dyer's favor, alone, did not establish the falsity of Porter's allegations and thus was not "clearly probative of truthfulness or untruthfulness." Evid.R. 608(B). Where the trial court can reasonably reach different conclusions regarding the admissibility of evidence, we cannot substitute our judgment for that of the trial court, even if we might disagree with the trial court's determination.

{¶ 36} Additionally, the trial court did not err in excluding the evidence under Evid.R. 616(A). We recognize that, " '[b]ecause the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness * * *.' "

*State v. Watson*, 2015-Ohio-4517, 46 N.E.3d 1090, ¶ 43 (2d Dist.), quoting *State v. Williams*, 61 Ohio App.3d 594, 597, 573 N.E.2d 704 (9th Dist.1988). In this case, however, the jury was aware from the witnesses' testimony that Porter and Dyer were divorced; Dyer and Porter's text messages and testimony, as well as Cunningham's testimony, suggested that their relationship was acrimonious. Considering the known relationship between the parties, the trial court did not abuse its discretion in concluding that the prior domestic violence protection order proceedings should not be admitted under Evid.R. 616(A), in the absence of evidence that the prior allegations were false.

{¶ 37} Dyer's first assignment of error is overruled.

### III. Exclusion of Defense Witness as Discovery Sanction

{¶ 38} Dyer's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING THE DEFENSE'S EYE WITNESS [SIC] FROM TESTIFYING AT TRIAL DUE TO UNTIMELY NOTICE WHEN THE STATE HAD 13 DAYS['] CALENDAR NOTICE ABOUT THE WITNESS INFORMATION PRIOR TO TRIAL AND THE STATE WAS NOT PREJUDICED BY THE TIMING OF THE NOTICE.

{¶ 39} In his second assignment of error, Dyer claims that the trial court abused its discretion in excluding Jackson from testifying at trial.[2] At trial, defense counsel proffered that Jackson would have testified that she was in Dyer's vehicle, that she had

---

[2] In his appellate brief, Dyer states that Jackson was "an unbiased third party and the only witness not related to either the complaining witness, the defendant, or both." The State's appellate brief indicates that Jackson was Dyer's girlfriend, not a neutral third party, and that she was "clearly biased in his favor." The record does not clarify Jackson's relationship to Dyer. At trial, no witness mentioned Jackson, and there was no suggestion that another person witnessed the events at Cunningham's house on July 18, 2016.

overheard the conversation between Dyer and Porter, that she did not hear any threat made by Dyer towards Porter, and that she saw no indication that Dyer was intoxicated.

{¶ 40} The trial court has discretion to regulate discovery in a manner consistent with Crim.R. 16. Crim.R. 16(L); *State v. Mobley*, 2d Dist. Montgomery No. 26858, 2016-Ohio-4579, ¶ 23. If it comes to the court's attention that a party has not complied with Crim.R. 16 or the court's discovery order, the trial court may "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 41} The Ohio Supreme Court has held that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus. This holding applies equally to discovery violations committed by the State and by the defense. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 42.

{¶ 42} Dyer failed to file his witness list by the discovery deadline, and he moved to file his witness list out of time. The State objected and sought to exclude Jackson and Dyer's oldest son as witnesses on the ground that it lacked a meaningful opportunity to interview or investigate these witnesses. The court reasonably found the State's objection to be meritorious.

{¶ 43} In ordering that Dyer could not present the testimony of his untimely-disclosed witnesses, the trial court fashioned a reasonable sanction for the untimely

disclosure. Significantly, the trial court permitted Dyer to seek a continuance of the trial if the excluded witnesses were crucial to his defense. This option would have given the State the notice that it required and allowed Dyer to present his witnesses; Dyer elected not to seek a continuance. We find no abuse of discretion in the trial court's ruling.

{¶ 44} Dyer's second assignment of error is overruled.

## IV. Conclusion

{¶ 45} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.


Copies mailed to:

Misty M. Connors
Amy B. Musto
Hon. Carl S. Henderson